FILED

01/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0161

DA 21-0161

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 21N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JACOB OVERLEASE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-19-295A
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Samir F. Aarab, Boland Aarab PLLP, Great Falls, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

      Marty Lambert, Gallatin County Attorney, Eric N. Kitzmiller, Bozeman,
Montana

          Submitted on Briefs:  September 21, 2022

                    Decided:  January 31, 2023

Filed:

_____
                    Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jacob Overlease appeals his August 2020 judgment of conviction on jury trial in the Montana Eighteenth Judicial District Court, Gallatin County, on the offense of Driving Under the Influence of Alcohol (DUI), fourth or subsequent offense, a felony in violation of §§ 61-8-401 and -731, MCA (2019). We affirm.

¶3 While on patrol around 11:30 p.m. on June 16, 2019, a Gallatin County Sheriff's Deputy encountered an oncoming pickup truck, driven by a man later identified as Overlease, travelling eastbound on the paved highway frontage road outside of Three Forks, Montana. The deputy later testified that, after seeing the truck "swerve over near the guardrail," and then overcorrect back over the center line, she turned around to follow and then saw the truck turn off into a roadside rest area at the Headwaters State Park. The deputy then took up a position on a connecting road between the frontage road and the rest area to wait and see if the truck would leave the rest area, at which point she could then see any further driving irregularity. When she did not see the truck leave after a few minutes, the deputy drove into the rest area where she saw the pickup parked unattended with the driver's door open and headlights on.

¶4 The deputy exited her patrol car to attempt to locate the driver on foot, and eventually found him lying on his back in the grass. Upon contact and initial questioning,

Overlease explained that he pulled into the rest area to let his puppy dog out of the truck after it unexpectedly began vomiting while they were traveling down the road. The deputy recalled that Overlease initially stated that he had previously consumed about four alcoholic beverages that evening after working in Butte, Montana. She also recalled seeing an open alcoholic beverage container in his truck, to which Overlease explained that he had just opened it before the puppy started vomiting. The deputy later testified, *inter alia*, that she did not see any indication of dog vomit in the truck. Based on the various circumstances observed, and Overlease's appearance and manner of speech, the deputy subjected him to consensual field sobriety testing. After he refused to consent to her request that he submit to a portable breath test, the deputy arrested Overlease for DUI and driving with a suspended driver's license. He later consented to a post-arrest Intoxilyzer 8000 breath test which indicated a 0.160 breath/blood alcohol content. The State subsequently charged Overlease in district court with felony DUI, fourth or subsequent offense, and misdemeanor driving with a suspended license. At the outset of initial trial setting in February 2020, Overlease pled guilty to the misdemeanor.

¶5 Following an initial mistrial on the felony DUI due to a hung jury, the case again proceeded to jury trial on the felony in August 2020. Only two witnesses testified, the investigating sheriff's deputy and Overlease. After the State rested its case-in-chief, Overlease testified and denied that he had been driving under the influence of alcohol before the deputy arrived at the scene. He asserted that he became under the influence only after stopping at the rest area. He testified that, after his puppy vomited in the truck, he stopped to let it out of the truck and to clean up and use the restroom. The deputy testified

that Overlease initially told her that, when his puppy started vomiting before he turned into the rest area, he had just opened his first beer—one of two 24-ounce alcoholic beverages/beers that he said he had earlier purchased upon stopping at a Town Pump store in Whitehall, Montana, on the way from Butte. He testified that he consumed both, before the deputy arrived, over a period of approximately 30 minutes while he was waiting on the grass at the rest area for his puppy to return after running off. However, in contrast to his more limited on-scene account of events to the deputy, Overlease further asserted at trial that he also stopped and was waiting at the rest area because he had cell service there and was waiting for his girlfriend to text him on her way home to Clarkston, Montana, from her job in West Yellowstone.[1] He testified that he then intended to wait for her to come and pick him up at the rest area, where he planned to leave his puppy locked in his truck until he returned in the morning, so that he and his girlfriend could have dinner together in Clarkston where he lived. On redirect following the State's cross-examination challenge of his new account regarding his girlfriend, Overlease explained that the deputy never asked him about it and that he did not mention it because he was preoccupied with answering her questions.

¶6     The instruction set on the applicable law given to jury by the court prior to closing arguments included, *inter alia*, the following witness credibility assessment instruction:

> You alone are the sole judges of the credibility or believability of all the witnesses testifying in this case. You are also the judges of the weight or the importance to be given their testimony. . . . In determining the facts in this case, it may be necessary for you to determine what weight should be given

---

[1] Clarkston, Montana, is about ten miles down the road from the Headwaters State Park rest area.

to the testimony of each witness.  To do this, you should carefully consider all the testimony, the circumstances under which each witness testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. . . .   [*Inter alia*,] [y]ou may consider the extent to which the witnesses are either supported or contradicted by other witnesses or evidence in this case.

.    .    .

If you believe that any witness has lied about important matters in the case, you must reject that false testimony.  You can view the rest of that witness' testimony with distrust and you have the choice of either rejecting the remaining testimony, or finding such testimony is worthy of belief.  The rule about rejecting false testimony and suspecting the remainder does not apply if a witness is unintentionally mistaken as to some matters or facts, or gives evidence concerning unimportant matters without trying to deceive the court or jury.

In his closing argument, the State prosecutor later referenced the credibility instruction, to

wit, as pertinent:

[A]t this time, I would like to take your attention to [the jury instruction] about testimony that *you believe* is false. . . .   It says something to the effect that *if you believe* a *witness has lied* about important matters in the case, you must reject that testimony, and you can view the rest of that witness' testimony with distrust, and you may reject the remaining testimony.  When someone gets on the stand to testify as a witness, they're putting their credibility on the line.  Therefore, *under that instruction*, what *I'm suggesting* . . . is that *you can view* Mr. Overlease's testimony, with regards to when he was drinking, with distrust *because his testimony simply doesn't make sense*, and because this instruction applies to all witnesses who testify . . . .   There simply *wasn't enough time* for him to consume the alcohol he says he consumed, from the time he parked, to when [the deputy] contacted him, if he did everything else that he claimed he did.

*If he was really waiting for his girlfriend to pick him up*, and he had been there that long, why didn't he say that to [the deputy]?  Why have this whole discussion about who's going to tow the truck, locking the truck up, what's going to happen to [the dog]? . . .   If he knows his girlfriend is really coming there that evening, why be concerned about leaving his truck there and have somebody steal his tools?  He knows his girlfriend's coming.  *What this means* . . . is [his] testimony on these points is *not worthy of your belief*, if

*you look at the jury instructions* on how to consider and weigh the credibility in light of the testimony.

(Emphasis added.) Defense counsel immediately interjected and generally objected to "any prosecutorial discussion of credibility of witnesses." Without ruling, the District Court noted the objection and told the prosecutor to "[m]ove on."

¶7 Upon deliberation, the jury returned a guilty verdict on the felony DUI charge. The District Court later sentenced Overlease to a 13-month term of commitment to the Montana Department of Corrections (DOC) for placement in an appropriate correctional facility or program with recommendation for placement in the DOC "Watch" Program, followed by probation for the balance of the 13-month term, and a consecutive three-year suspended DOC commitment.[2] Overlease timely appeals.

¶8 Criminal prosecutors generally "have wide latitude" during trial closing and rebuttal arguments to, *inter alia*, "comment on and argue *for any position or conclusion* regarding the nature, quality, or effect of the [trial] evidence in relation to the applicable law and the [State's] burden of proof" if "based on the [record] evidence, applicable law as stated in the jury instructions, and his or her *analysis of the evidence*." *State v. Miller*, 2022 MT 92, ¶ 22, 408 Mont. 316, 510 P.3d 17 (emphasis original—internal punctuation and citations omitted). On the other hand, "[a]s applicable to the States as a matter of substantive due process implicit in the Fourteenth Amendment Due Process Clause, the Sixth Amendment to the United States Constitution, and Article II, Sections 24 and 26, of the Montana

---

[2] The court further sentenced him to a concurrent six-month suspended term in the county jail on his prior guilty plea to the offense of driving on a suspended license.

Constitution, similarly guarantee criminal defendants the right to a fair trial before an impartial jury." *Miller*, ¶ 21. "Also implicitly guaranteed to the criminally accused as fundamental liberty interests under the Fourteenth Amendment Due Process Clause are the related rights to the presumption of innocence and the requirement that the government prove every element of a charged offense beyond a reasonable doubt." *Miller*, ¶ 21. Those fundamental constitutional fair trial rights thus "impose or implicate a number of highly nuanced restrictions on the otherwise broad latitude that prosecutors have" regarding jury argument at trial. *Miller*, ¶ 22. Further constraining prosecutors' generally wide latitude are applicable rules of evidence, and the statutory command that "the jury is the exclusive judge of the credibility, veracity, weight, and effect of the evidence." *Miller*, ¶¶ 22 and 24 (citing §§ 26-1-201 through -203, MCA). Thus, as pertinent here, prosecutors generally may neither "express a direct personal opinion or belief that a witness, or his or her testimony, was or was not credible, believable, reliable, or truthful," nor "directly characterize a witness statement as a lie, or a witness or the accused as a liar or as having lied." *Miller*, ¶¶ 23-24 and 28-29 (citations omitted).

¶9 On balance then, "in contrast to a statement of or akin to a direct personal opinion" regarding the credibility of the trial testimony or pretrial statements of a witness or the accused, "prosecutorial closing arguments and comments are generally proper if made in the context of discussing the evidence, how it relates or corresponds to the law as stated in the jury instructions (including specified witness veracity and credibility assessment guidelines), and reasonable inferences supported by the evidence." *Miller*, ¶ 26 (emphasis omitted). "While expression of direct personal opinions on witness credibility are

improper, the prosecutor may nonetheless comment on, suggest, point-out, and argue reasonable inferences that [the] *jury* may draw from the evidence including, *inter alia*, comment on the credibility of witnesses as a comment on the evidence based on conflicts and contradictions in testimony." *Miller*, ¶ 27 (emphasis added—internal punctuation and citations omitted). Prosecutors may also "properly point out inconsistencies between the defendant's trial testimony and any pretrial statements or pre-*Miranda* silence to support an inference and argument" that he or she "changed his [or her] story after having time to think about the consequences." *Miller*, ¶ 30 (internal punctuation and citation omitted). They may similarly ask and argue as to which of multiple accounts provided by the defendant was the truth. *Miller*, ¶ 30 (citation omitted).

> [W]hile often highly nuanced, the dividing line between an improper and proper prosecutorial argument or comment regarding witness credibility or truthfulness or the guilt of the accused is whether, in the context of the entirety of the particular . . . argument at issue, the argument or comment is more akin to a statement of the prosecutor's personal opinion or direct characterization of the accused or a witness as "lying" or a "liar" (or his or her testimony as a "lie"), or rather, an argument or comment based on the prosecutor's *analysis of the evidence* regarding the nature, quality, or effect of the evidence and supported inferences in relation to the applicable law.

*Miller*, ¶ 27 (emphasis original). In contrast, however, it is improper for prosecutors to misstate, misrepresent, or mischaracterize the law as stated in the court's instructions. *State v. Labbe*, 2012 MT 76, ¶¶ 23 and 27, 364 Mont. 415, 276 P.3d 848 (citation omitted).

¶10 Here, Overlease asserts that the District Court erroneously allowed improper prosecutorial closing argument and comments including misstatement of the law, incomplete paraphrasing of the witness credibility assessment instruction, a statement of personal opinion regarding the credibility of Overlease's trial testimony, and

characterization of him as a "liar" whose testimony was "not worthy of belief." However, assuming, *arguendo*, that his far more detailed assertions of error on appeal were preserved for appeal within the scope of his more general objection at trial, *see, e.g.*, *State v. Sanchez*, 2008 MT 27, ¶ 50, 341 Mont. 240, 177 P.3d 444, the prosecutor did not directly characterize Overlease as a liar, or any of his testimony as a lie. Nor did the prosecutor's partial paraphrase of the substantive essence of the witness credibility assessment instruction substantially misstate, misrepresent, or mischaracterize the pertinent law as stated in the instruction. *See supra*. *See also* §§ 26-1-302(7), (9), -303(3), and (5), MCA; Montana Criminal Jury Instruction 1-102 and -103 (2009). Even to the extent that it arguably did, Overlease does not assert, nor has he shown, that the subject instruction given to the jury by the court was an inaccurate or incomplete statement of the pertinent law.

¶11　　Moreover, the prosecutor's use of the pronoun "I," and "suggest[ion] . . . that [*the jury*] *can view*" the subject testimony "with distrust because [it] simply doesn't make sense," was neither akin to nor a statement of direct personal opinion. (Emphasis added.) Rather, it was an express reference to the previously given jury instruction and, in context, an essentially correct argument on the instruction as applied to the subject trial evidence. Likewise the prosecutor's statements in reference to discrepancies or logical incongruity in Overlease's testimony that he stopped and was waiting at the rest area to be picked up by his girlfriend, to wit:

> What this means . . . is [his] testimony on these points is not worthy of your belief, if you look at the jury instructions on how to consider and weigh the credibility in light of the testimony.

In context, the prosecutor's statements and rhetorical questions at issue were thus permissible and proper arguments on the witness credibility assessment instruction as applied to the pertinent trial evidence. We hold that the District Court did not erroneously allow the prosecutor to make improper or inaccurate arguments on the subject jury instruction and pertinent evidence.

¶12 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE